# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:23-CV-00138-HBB

ALEXIS F.[1]                                                                              PLAINTIFF

VS.

MARTIN O'MALLEY, ACTING COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[2]                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Alexis F. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 15) and Defendant (DN 23) filed Fact and Law Summaries. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered December 20, 2023 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

FINDINGS OF FACT

On August 2, 2021, Plaintiff protectively filed an application for child's insurance benefits based on disability, and earlier on July 27, 2021, Plaintiff protectively filed an application for supplemental security income (Tr. 17).  Plaintiff alleged that she became disabled on August 31, 2020, as a result of seizures, bipolar disorder, depression, anxiety, and suicidal tendencies (Tr. 129, 139, 148, 159).   The applications were denied initially on January 6, 2022, and upon reconsideration on July 20, 2022 (Tr. 17, 128, 138, 170, 171)[3].  On August 10, 2022, Plaintiff filed a written request for a hearing (Tr. 219-21).

On February 9, 2023, Administrative Law Judge Brandie Hall ("ALJ") conducted a telephonic hearing due to the extraordinary circumstances of the COVID-19 pandemic (Tr. 17, 37).  Plaintiff and an attorney representative, Randal Heard, were present on the line (Tr. 17, 35-57).  Jessica Coles, an impartial vocational expert, testified during the hearing (*Id.*).

In a decision dated May 1, 2023, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 19-27). Plaintiff had not attained the age of twenty-two as of the alleged onset date (Tr. 19).  At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 31, 2020, the alleged onset date (*Id.*). At the second step, the ALJ determined that Plaintiff has the following severe impairments: bipolar disorder, post-traumatic stress disorder (PTSD), borderline personality disorder, and seizure disorder (Tr. 20).  At the third step, the ALJ concluded that

---

[3] The ALJ indicates that applications were denied upon reconsideration on July 22, 2022; however, the records shows it was denied on July 20, 2022 (Tr. 171).  The undersigned has used that date.

Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 20-21).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can have no exposure to workplace hazards like dangerous, moving machinery, unprotected heights, or commercial driving; she can have no driving as a part of the job duties; she cannot climb ladder, ropes, or scaffolding; she can understand, remember, and carry out simple, routine work instructions; she can maintain attention, concentration, and pace for simple work tasks; she can make simple work related decisions; she can adapt to occasional workplace changes; she can frequently interact with coworkers and supervisors; and she can interact occasionally with the public (Tr. 21).

Next, the ALJ determined that Plaintiff had no past relevant work (Tr. 26). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (Tr. 26-27). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act from April 27, 2019, through the date of the decision (Tr. 27).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 335-36). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680,

683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-696.

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. § 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]

42 U.S.C. § 1382c(a)(3)(A) (Title XVI); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

4

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## Finding No. 5

1. Arguments of the Parties

Plaintiff argues that the RFC is not supported by substantial evidence because the medical evidence of the record establishes greater limitations (DN PageID # 1199). Plaintiff first points to Plaintiff's counselor's, Ms. Zarotny, opinion and Plaintiff's statements to argue that more extreme limitations are required and highlights that "all of the opinions recognized a compromised ability to concentrate, persist and maintain pace" (*Id.* at PageID # 1200). Further, Plaintiff asserts that the ALJ's focus on noncompliance when finding Ms. Zarotny's opinion unpersuasive is flawed as it overlooks "that people with psychiatric disorders often do not adhere to treatment" and "proof

5

of noncompliance alone is not the end of the analysis under the regulations" (*Id.* at PageID # 1202-03). Plaintiff argues the ALJ failed to conduct the proper analysis as the ALJ never found that the treatment would restore Plaintiff's ability to work (*Id.* at PageID # 1203). Plaintiff claims that the ALJ failed to include the state agency consultants' opined limitations when crafting the RFC. Lastly, Plaintiff claims the ALJ did not properly evaluate Plaintiff's subjective complaints (*Id.*).

Defendant counters that Plaintiff's argument is nitpicking the ALJ's summary of the state agency consultants' opinions; that, at step three, the ALJ found Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace; and that at step five, the ALJ recounted "the psychologists' findings that Plaintiff was capable of performing routine tasks on a sustained basis, which [the state agency consultants] had explained resulted from her moderate limitations in sustained concentration and persistence limitations" (DN 23 PageID # 1228). Regarding Ms. Zarotny's opinion, Defendant asserts the ALJ properly found that the opinion was unpersuasive as the opinion was unsupported and inconsistent with evidence of the record (*Id.* at PageID # 1231). On noncompliance, Defendant argues Plaintiff fails to show that her refusal to attend treatment or take prescribed medications were symptoms of her mental impairments (*Id.* at PageID # 1232). Defendant claims that the ALJ properly considered Plaintiff's subjective complaints as the ALJ gave well-supported reasons for finding Plaintiff's reports were inconsistent with evidence of the record (*Id.* at PageID # 1234).

2. Discussion

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946(c). Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.

20 C.F.R. §§ 416.929, 416.945(a)(3), 416.946(c).  Thus, in making the RFC determination Administrative Law Judges must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.  20 C.F.R. §§ 416.920c, 416.929(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 17).  *See* 20 C.F.R. § 416.920c.  Refer to 20 C.F.R § 416.902(a)(1)-(8) for the list of "*acceptable medical sources*."

The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source.  20 C.F.R. § 416.920c(a).[5]  Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.  20 C.F.R. § 416.920c(a) and (b).  The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(c)(1)-(5).[6]  Of these five factors, the two most important are

---

4 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."  20 C.F.R. § 416.913a(a)(1).  Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.  20 C.F.R. § 416.913a(b)(1).

5 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927(c)(2).

6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. § 416.920c(c)(3)(i)-(v).

supportability and consistency. 20 C.F.R. § 416.920c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2).

An Administrative Law Judge will articulate how she considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation when the Administrative Law Judge finds that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same. 20 C.F.R. § 416.920c(b)(3).

> i. *Ms. Zarotny's Opinion*

Plaintiff's brief primarily focuses on the ALJ's treatment of Ms. Zarotny's opinion. The ALJ found Ms. Zarotny's opinion was unpersuasive with the following:

> Brooke Zarotny, a licensed professional counselor associate, opined the claimant would be off task more than twenty-five percent of the time during an average day; estimated the claimant would be likely absent from work as a result of their impairments and/or treatments fifteen times per month; would require close supervision or correction by a supervisor fifteen times per month, would respond inappropriately to supervisor intervention or correction fifteen times per month, would caused [sic] disruption to the normal operation of a workplace requiring simple repetitive routine tasks fifteen times per month; had mild limitation in ability to remember locations and work like procedures; moderate limitation in ability to understand and remember very short and simple instructions; moderate limitation in ability to carry out short and simple instructions; marked limitation in ability to carry out detailed instructions; marked limitation in ability to maintain attention and concentration for extended periods; moderate limitation in ability to perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances; extreme limitation in ability to sustain an ordinary routine without special supervision; marked limitation in ability to work in coordination with or proximity to

> others without being distracted by them; marked limitation in ability to make simple work related decisions, extreme limitation in ability to complete a normal work day and week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of interruption; extreme limitation in ability to interact appropriately with the general public; marked limitation in ability to interact appropriate with co-workers, marked limitation in ability to interact appropriately with supervisors; moderate limitation in ability to ask simple questions or request assistance, moderate limitation in ability to accept instructions and respond appropriately to criticism from supervisors; marked limitation in ability to get along with co-workers without distracting them or exhibiting behavioral extremes; no limitation in ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; marked limitation in ability to respond appropriately to changes in the work setting; no limitation in ability to be aware of normal hazards and take appropriate precautions; moderate limitation in ability to respond to change in routine settings; marked limitation in ability to set realistic goals or make plans independently of others; and extreme limitation in ability to tolerate normal levels of stress (Exhibit 26F). These conclusions were not persuasive. The undersigned notes the marked to extreme limitations in functioning assigned to the claimant by this provider are not supported by the very limited treatment records from this provider (Exhibit 25F), the details of which are not supportive of the extensive limitations assigned. The undersigned notes this provider only provided the claimant with outpatient mental health treatment for a short period of time prior to assigning these limitations, yet asserted the limitations had been present for three years. In addition, the restrictions assigned are not consistent with other evidence of record as well, with the undersigned noting there was a large gap in mental health treatment from when she was discharged from treatment by her outpatient mental health treatment provider in early 2022, noting the claimant had not returned to treatment after her hospitalization in late 2021 (Exhibit 14F), and then not establishing treatment with another outpatient mental health treatment provider until September of 2022 (Exhibit 25F) with no evidence of any episodes of decompensation or hospitalizations despite a lack of treatment during this time period.

(Tr. 24-25). Here, the ALJ complied with the regulations by discussing how this opinion was not supported or consistent with the rest of the medical record. The ALJ clearly states the opinion, containing the more extreme limitations, is not supported as there is a limited treatment record

from Zarotny. The ALJ considered the consistency of the opinion as there were gaps in Plaintiff's mental health treatment. Additionally, the undersigned notes that the treating source opinion with the opined restrictive limitations is a check-box form and Zarotny did not elaborate on her opined limitations. *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (collection of cases stating "[t]hese cases recognize that the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence."); *Joseph W. v. O'Malley*, No. 5:23-cv-00135-LLK, 2024 U.S. Dist. LEXIS 104420, at *8 (W.D. Ky. June 11, 2024). Plaintiff's argument that the ALJ erred to fully complete the noncompliance analysis is not persuasive as the focus of her consistency factor was not Plaintiff's lack of compliance with a prescribed treatment, but instead emphasizing the lack of treatment and the lack of hospitalizations during those gaps of treatment.

### ii. State Agency Psychological Consultants

Next, Plaintiff argues that the ALJ "did not acknowledge or discuss" the state agency psychological consultants' prior findings regarding Plaintiff's concentration and response to criticism when crafting the RFC (DN 15 PageID # 1201). The ALJ discussed the opinions of both state agency psychological consultants with:

> Dr. Conger and Dr. Perritt, state agency psychological consultants, opined the claimant had adequate understand and memory skills to perform appropriately in a work setting, was *mentally capable of performing routine tasks on a sustained basis,* may have some *socially difficulties as well as a negative reaction to criticism at times* but shows the ability to relate effectively in general, and overall had adequate adaption abilities to perform effectively within a work setting *but may experience some initial difficulty adjusting to changes in work duties* and may also experience problems when using public transportation or when traveling in unfamiliar settings without further training in these areas (Exhibits 10A, 12A, 13A, 14A). These conclusions were generally persuasive, as they were

10

> consistent with evidence of record as a whole which supported mild to moderate limitation in functioning. The undersigned notes treatment records reflect inconsistent outpatient mental health treatment on the claimant's part with gaps in treatment (Exhibits 7F, 14F, 25F). While the claimant had some inpatient psychiatric treatment during the time period under consideration, these hospitalization [sic] were generally very brief in nature and symptoms resolved relatively quickly (Exhibits 7F, 11F, 17F). Treatment records reflect the claimant had multiple inpatient psychiatric hospitalizations as an adolescent prior to the alleged onset date of disability. These hospitalizations were more frequent and of longer duration than the hospitalizations occurring since the alleged onset date of disability (Exhibits 18F, 19F, 20F, 21F, 22F, 23F, 24F). In comparison and in the context of a longitudinal period, more recent records suggest the claimant has achieved some measure of stability since that earlier time period.

(Tr. 24) (emphasis added). Plaintiff asserts that the ALJ failed to discuss that the consultants found Plaintiff would have a negative reaction to criticism at times and may experience initial difficulty adjusting to changes in her work duties; however, the quoted language clearly shows that the ALJ did discuss these limitations when crafting the RFC.

Next, regarding the consultants' opinions that Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods: Drs. Conger and Perritt found Plaintiff had a moderate limitation on Plaintiff's ability to "concentrate, persist, or maintain pace" (Exs. 10A, 12A, 13A, 14A). As emphasized in the above quote, the ALJ stated Plaintiff was capable of routine tasks on a sustained basis, which is the same language both Drs. Conger and Perritt used in their opinion explanation section with "[a]lthough her condition may result in some concentration problems at times, she is mentally capable of performing routine tasks on a sustained basis" (Tr. 24, 135, 157). Further, earlier in the decision, the ALJ explicitly mentions the moderate limitation with the following:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant stated she could pay attention about two minutes and did not finish what she starts

11

> (Exhibit 4E). A third party stated the claimant could pay attention for two to three minutes (Exhibit 5E). It was reported the claimant could pay attention for one minute (Exhibit 10E).

(Tr. 21). Within the RFC finding, the ALJ provided the following limitation: Plaintiff "can maintain attention, concentration, and pace for simple work task[]" (*Id.*). Thus, the ALJ's RFC is supported by substantial evidence as the ALJ clearly acknowledged and discussed the concentration limitation when crafting the RFC with this limitation in mind.

### iii. Plaintiff's Subjective Complaints

Lastly, Plaintiff contends the ALJ did not properly evaluate Plaintiff's subjective complaints. Courts "generally defer to an ALJ's credibility determination because '[t]he opportunity to observe the demeanor a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.'" *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 531 (quoting *Beavers v. Sec. of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). If the ALJ finds that the plaintiff has a medically determinable impairment that could reasonably be expected to produce their symptoms, then the ALJ must then evaluate the intensity and persistence of those symptoms to determine how the symptoms limit the plaintiff's capacity for work. 20 C.F.R. § 416.929(c)(1). When making this determination, the ALJ considers objective medical evidence and other evidence like: the plaintiff's daily activities; the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; forms of treatment other than medication that the plaintiff receives to relieve their symptoms; and other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The ALJ found Plaintiff's subjective complaints persuasive with the following:

> The undersigned notes the claimant and third parties on her behalf made multiple statements regarding the claimant and her ability to function (Exhibits 3E, 4E, 5E, 6E, 10E, 19E, testimony). These were useful as to observations but less so as to capacity to function in the absence of expertise. The undersigned did not find the claimant's assertions regarding alleged frequency and severity of symptoms alleged to be supported by or consistent with evidence of record as a whole. As discussed extensively above, the claimant sought and received limited and conservative treatment for her psychiatric and physical complaints with gaps in treatment reflected in treatment records. Indeed, the undersigned did not find the evidence of record as a whole supported by extensive limitations than those set forth in the above residual functional capacity.

(Tr. 25-26). Here, the ALJ's rationale for finding Plaintiff's subjective complaints were not consistent with the record is supported by substantial evidence. 20 C.F.R. § 416.929(c)(3)(i)-(vi); SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 16, 2016). The ALJ properly relied on the medical evidence of the record and Plaintiff's conservative treatment to find that her complaints were not consistent or supported by the evidence of record.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. *Id.* After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief regarding her challenge.

## **ORDER**

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

July 19, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to: Counsel of Record